Samuel S. Paymer v. Commissioner. Joseph J. Paymer v. Commissioner. Westrich Realty Corp., and/or Samuel S. Paymer, and Joseph J. Paymer, Directors and Trustees in Liquidation v. Commissioner. Raymep Realty Corp., Inc., and/or Samuel S. Paymer and Joseph J. Paymer, Directors and Trustees in Liquidation v. Commissioner.
Paymer v. Commissioner
Docket Nos. 108469-108472.
United States Tax Court
1943 Tax Ct. Memo LEXIS 529; 1 T.C.M. (CCH) 362; T.C.M. (RIA) 43005; January 2, 1943
*529 Sidney Paymer, Esq., 25-21 - 51st St., Long Island City, New York City, and Nathaniel Niller, C.P.A., for the petitioners. F. S. Gettle, Esq., and Ralph H. Dwan, Esq., for the respondent. SMITH Memorandum Findings of Fact and Opinion SMITH, Judge: These proceedings, consolidated for hearing, are for the redetermination of deficiencies for the year 1938 as follows: Deficiency
Samuel S. Paymer
$ 41.04
Joseph J. Paymer
41.04
Westrich Realty Corp.: Income tax
31.66
25% delinquency penalty
7.91
Excess profits tax
15.42
25% delinquency penalty
3.86
Raymep Realty Corp., Inc.: Income tax
1,070.70
25% delinquency penalty
267.68
Excess profits tax
967.04
25% delinquency penalty
241.76
These proceedings present the following questions: (1) Should the corporate entities of two real estate corporations be ignored in the determination of tax deficiencies due from the petitioners? (2) Should the operating results of the two corporations wholly owned by Samuel S. Paymer and Joseph J. Paymer be taxed to the respective corporations or should the income from such operations be taxed to the two stockholders? (3) Should a gain of $500 realized on the sale of mortgage certificates *530 be included in the income of Raymep Realty Corp., Inc.? (4) Should the delinquency penalty be asserted for the failure of Raymep Realty Corp., Inc., and Westrich Realty Corp. to file corporate income tax returns for 1938? (5) Did the respondent properly include the income from the operations of Raymep Realty Corp., Inc. and Westrich Realty Corp. in the individual income tax returns of Samuel S. Paymer and Joseph J. Paymer as dividends and salaries from such corporations since the income from such corporations was distributed to these two individuals? Findings of Fact 1. Samuel S. Paymer and Joseph J. Paymer, brothers, are residents of New York City. They filed their income tax returns for 1938 with the collector of internal revenue for the third district of New York. Raymep Realty Corp., Inc. and Westrich Realty Corp. have no regular place of business but a mailing address c/o Paymer Bros., 25-21 51st Avenue, Long Island City, N. Y.
2. The two individual petitioners have carried on business as partners since about 1900 although no partnership agreement was ever entered into in writing. 3. Prior to 1932 Samuel S. Paymer and Joseph J. Paymer owned various parcels of real estate *531 and in 1928 and 1929 constructed buildings on two of them. The title to this real estate was in the names of the two brothers. The building erected in 1928 was leased to the Western Carpet Co. and that erected in 1929 to the Richmond Radiator Co. Both leases were for periods of 10 years, that of the Western Carpet Co. expiring December 31, 1938. The buildings erected were one-story commercial type. The two brothers collected the rents from the leased properties. 4. In 1932 Raymep Realty Corp., Inc., (hereinafter sometimes called Raymep), and Westrich Realty Corp. were organized under the laws of the State of New York with broad powers to acquire, buy, sell, lease and exchange real property, lands and interest in lands; to build, construct, own, hold, improve, develop and manage any properties so acquired, to lease, manage, improve and develop and generally deal in real property, land and buildings. The capital stock of both corporations was owned in equal amounts by the two individual petitioners. Samuel S. Paymer was elected president and Joseph J. Paymer treasurer at the first election of officers of the two corporations and remained such until after 1938. 5. Both of the corporations *532 were organized about 1932 under the following circumstances: (a) In 1929 Samuel S. Paymer became a co-maker on a $1,200 note of one Harold Silverman to the National City Bank. (b) In 1930 and 1931 the said partner guaranteed the account of Eastern Smelting & Refining Co. owned by a brother and brother-in-law of his to the Bank of the United States. (c) Harold Silverman defaulted on his note to the National City Bank and Samuel S. Paymer began to pay it off monthly, in the meantime trying to get Silverman and the other co-makers to cooperate with him and make payments although the bank continued to look only to Samuel S. Paymer. (d) Paymer fared no better on his guarantee of the Eastern Smelting & Refining Co. account as the Bank of the United States closed and the bank looked to him for the payment of approximately $2,000 which was owed on the account at the time the bank closed its doors. (e) Both the National City Bank and the Bank of the United States looked to Samuel S. Paymer for the payment of these obligations, both starting suits and recovering judgments against him. (f) Samuel S. Paymer knew he was not judgment proof but he figured that if he paid these obligations *533 to the banks he would not recover anything from the principal debtors, whereas if he permitted these suits to lag there was a possibility that the principal obligors would make payments in the meantime and therefore with that in mind he caused these corporations to be formed for the purpose of having them hold title to the property until such time as these obligations were taken care of by them. 6. On June 15, 1932, Samuel S. Paymer and Joseph J. Paymer by deed transferred to Raymep a parcel of land with building and improvements thereon located in the Borough of Queens at the intersection of 50th Avenue and 27th Street. There was no reservation in the deed transferring the real property from the grantors to Raymep Realty Corp., Inc. No other papers were executed reserving any interest in the property to the individuals. The minutes of a stockholders' meeting of Raymep dated June 15, 1932, contains a clause reading as follows: The said conveyance was and is made with the express understanding that the corporation is only to hold title to the property, the beneficial interest and profits to be in the individual stockholders, and the management and control of the property to be exclusively *534 theirs. It is understood and agreed that this corporation was only organized for the convenience of the shareholders in the management thereof. 7. On July 5, 1933, Paymer Bros. Realty Corp., Inc. transferred a parcel of real estate to Westrich Realty Corp. Prior to the ownership of this piece of property by Paymer Bros. Realty Corp., Inc., such property was owned by Samuel S. Paymer and Joseph J. Paymer. The two Paymer brothers had transferred this real estate to Paymer Bros. Realty Corp., Inc., just prior to its conveyance by that corporation to Westrich Realty Corp. The minutes of a directors' and stockholders' meeting of this corporation held on July 4, 1933, state that the above referred to conveyance was made "with the express understanding that the corporation is only to hold title to the property, the beneficial interest to be in the individual stockholders, and the management and control of the property to be theirs exclusively. This corporation was only organized for the convenience of the shareholders in the management thereof." 8. The two Paymer brothers on June 28, 1928, entered into a lease agreement with the Richmond Radiator Co., Inc. (hereinafter sometimes called *535 Radiator Co.), for a term ending December 31, 1938. On December 9, 1937, Raymep and Radiator Co. entered into a lease for the same premises covered by the lease entered into June 28, 1928, for an additional term of five years beginning January 1, 1939, and ending December 31, 1944. 9. Outside of the organization meetings the two corporate petitioners never held any meetings; kept no corporate minutes besides the original minutes; had no office for the transaction of business; transacted their business whenever Samuel S. Paymer and Joseph J. Paymer happened to be together; never elected any directors or any officers after the first election of officers; and the board of directors never ratified any of the acts of the brothers. The boards of directors were never called together for the purpose of authorizing either of the brothers to conduct any business. The two brothers who were the sole stockholders of the corporation never paid either corporation any money for the issuance of their shares of stock, the sole consideration therefor being deeds of transfer of the property to the corporations at the time of organization. 10. From 1932 until 1936 or 1937 all rental receipts and profits *536 of the corporation were deposited in the partnership account (Paymer Bros.) which was originally opened in 1912 or 1913 and no attempt was made to segregate the rents received from property held by Raymep from those received from the property held by Westrich Realty Corp. The corporations never had bank accounts. 11. After the organization of the corporations all transactions relating to the real properties owned by the two corporations were treated as partnership operations. The rents collected from the lessees were treated as partnership income and all expenses connected with the properties or with the corporations were treated as partnership expenses including an allowance for depreciation on the demised properties. If either of the partners needed money he was at liberty to take it from the partnership and both Samuel S. Paymer and Joseph J. Paymer used these monies to assist their own individual enterprises. 12. After title to the property was conveyed to Raymep the leases which had been in existence since 1928 were never transferred or assigned to the corporation. 13. Raymep throughout the year 1938 exercised ownership and control of the two leases executed with the Radiator *537 Co. and on March 22, 1938, it entered into an agreement with the Guardian Life Insurance Co. of America pertaining to a loan of $50,000 from the insurance company. As part of the security for the loan the insurance company required an assignment of the leases dated June 28, 1928, and December 9, 1937, which had been entered into between Raymep and Radiator Co. Under the agreement of March 22, 1938, Raymep assigned to the insurance company all rights, profits, and interest pertaining to and arising from the leases. In the agreement Raymep expressly covenanted that the leases with the Radiator Co. were in full force and effect and that Raymep was the sole owner and holder of them and of all right, title and interest in, to, and under the leases. Upon the securities supplied by Raymep the $50,000 loan was granted. The agreement assigning the leases to the insurance company was signed in the name of Raymep by Samuel S. Paymer, president. 14. The policies covering the insurance carried on the warehouse building owned by Raymep were made out in the name of the corporation. The corporate franchise taxes were paid to the State of New York by Raymep. Capital stock tax returns were filed by *538 both Raymep and Westrich for the fiscal year ending June 30, 1938. 15. No corporate income tax returns for the years 1932 to 1938, inclusive, were filed by Raymep or Westrich Realty Corp. A partnership return for Paymer Bros. was filed for the calendar year 1938 in which the income and expenses of Raymep, Westrich Realty Corp., Paymer Bros. Realty Co., Inc., and Rorden Realty Corporation were included. All four corporations were owned in equal proportions by the two Paymer brothers. The net income reported on the partnership return filed in the name of Paymer Bros. is the net income of the four corporations after taking into account the earnings of Raymep and Westrich Realty Corp. and deducting from the sum thereof the losses of Rorden and Paymer Bros. 16. During 1938 Raymep had gross income from rentals of $18,999.86 and Westrich had gross income from rentals of $3,300. The rental income received by Raymep in 1938 came from Richmond Radiator Co., Inc. Raymep and Westrich had various corporate expenses during 1938 such as interest, repairs, taxes, insurance and corporate franchise taxes. 17. The rents received by Westrich Realty Corp. during 1938 amounted to $3,300. 18. The partnership *539 of Paymer Bros. in 1938 or prior thereto purchased outstanding certificates of indebtedness of Raymep for $4,500. During 1938 the partnership received $87.50 interest thereon and during 1938 sold the certificate at a profit of $500. In his determination of the deficiencies against Raymep the respondent has held that both the interest and the profit realized from the certificates of indebtedness is a part of the gross income of Raymep. Opinion The principal question presented by these proceedings is whether the two corporate petitioners are liable to income tax in any amount upon the rents paid by the lessees of properties owned by them during the year 1938. It is the petitioners' contention herein that these corporations were mere "dummy" corporations holding the legal title to real estate, the beneficial interest of which was in their stockholders. Petitioners also contend that the corporation carried on no business during 1938. Under the income tax acts every corporation not specifically exempt from tax is required to file an income tax return and pay the tax that is due upon its net income computed in the manner provided by the income tax act. No contention is made in this case *540 that the corporate petitioners qualify as corporations exempt from income tax. The only contention is that they are "dummy" corporations which had no taxable income. Under all the income tax acts a corporation is a legal entity separate and distinct from its stockholders even though all of its shares of stock are owned by a single stockholder. Thus in , it is said: * * * From the beginning the Revenue Acts have recognized a corporation and its shareholders as separate taxpayers. Even when one man owns all the stock, he and his corporation will usually be treated as separate legal entitles for tax purposes. ; ; . Although the corporate entity was disregarded in , *541 this case rather than being in the petitioner's favor militates against him. * * * In distinguishing the case of , where the corporate entity was not disregarded and a sale by the corporation to its sole stockholder was held to result in a taxable profit, Mr. Justice Reed at page 477 of 308 U.S., at page 358 of L. Ed. 406, pointed out the reason for the general rule in these words: "A taxpayer is free to adopt such organization for his affairs as he may choose and having elected to do some business as a corporation, he must accept the tax disadvantages." The government, however, "may sustain or disregard the effect of the fiction as best serves the purposes of the tax statute." * * *
It is the contention of the petitioners that the two real estate corporations carried on no business during 1938. We think, however, that the evidence conclusively shows that Raymep Realty Corp.; Inc. transacted a considerable amount of business during that year. It secured a loan from the Guardian Life Insurance Co. upon its *542 property. This clearly was a transaction of business. The petitioners further contend that the leases which Paymer Bros. obtained from Richmond Radiator Co., Inc. and Western Carpet Co. were never transferred to the corporate petitioners. In the circumstances of these proceedings we think that that is immaterial. We cannot doubt from the entire evidence that the corporations were regarded as owning the leases during 1938. In applying for the loan from Guardian Life Insurance Co., Raymep stated that it was the owner of the lease upon the property to which it held legal title; not only that it was the owner at the date of the agreement but that it had been the owner prior thereto. Apparently the Guardian Life Insurance Co. accepted an assignment of the leases from Raymep as owner. The facts are not so detailed with regard to Westrich Realty Corp. but clearly there is nothing in the evidence that leads us to believe that Westrich is not liable to income tax as determined by the respondent. The partnership, Paymer Bros., claimed the deduction from gross income of depreciation upon the demised properties. Quite clearly the depreciation, if any was sustained, was sustained by the corporations *543 which held title to the real estate. In Palcar Real Estate Co. v. Commissioner (C.C.A., 8th Cir.), decided November 3, 1942, it was held that a corporation holding record title to property which collected rentals therefrom and engaged in related activities was not a "dummy" corporation serving merely as conduit of rentals to its stockholders as the beneficial owners. In that case the court said: The Board held * * * that petitioner's activities for the years involved had been such that the Commissioner was justified in determining that "the corporation's title to the property is not nominal and that it is taxable on the net proceeds realized under the lease." Petitioner contends that the Board erred in not holding, as a matter of law, that it was exempt from the payment of any income taxes, on the ground that it was "a mere 'dummy' corporation, agency, instrumentality or conduit of title and rentals." As we read the expressions in , it seems to us that we must accept as settled that a corporation which has been conducting business activities as its own, *544 for profit, is not in a position to claim the status of mere nominality for income tax purposes, in order to improve the tax position of its stockholder interests. The government may properly treat the corporate entity and its profit-making operations in such a situation as matters of substance and not of form, if it chooses to do so. The fact that the corporation may neither have been intended nor used to secure some other tax advantage is quite immaterial. In the determination of the petitioners' income tax liability for 1938 the respondent broke down the accounts of the Paymer Bros. partnership to show the income and deductions allocable to each of four corporations as follows: Samuel J. Paymer et al.
Raymep
Rorden
Realty Cor-
Realty
Total
poration, Inc.
Corp.
Rents Received
$29,499.96
$18,999.96
$6,000.00
Expenses: Interest on Mortgages
$ 7,297.50
$ 3,277.50
$1,800.00
Repairs
872.09
424.89
383.25
Taxes on Real Estate
6,840.50
2,948.80
1,824.50
General Expenses
52.23
52.23
Legal and Accounting
175.00
175.00
Insurance
1,829.95
733.59
926.08
Corporate Franchise Taxes
224.52
189.52
15.00
Water Taxes
24.95
Mortgage Refinancing
357.95
357.95
Salary, E.M.P.
150.00
150.00
Depreciation
3,147.77
1,194.44
1,543.33
Total Expenses
$20,972.46
$ 9,503.92
$6,492.16
Less: Income from Bonds
87.50
87.50
Net Expenses
$20,884.96
$ 9,416.42
$6,492.16
Net Income Reported on Returns
$ 8,615.00
$ 9,583.54
($ 492.16)
*545 Paymer
Westrich
Bros. Realty
Realty
Corp., Inc.
Corp.
Rents Received
$1,200.00
$3,300.00
Expenses:
Interest on Mortgages
$1,050.00
$1,170.00
Repairs
63.95
Taxes on Real Estate 1,048.80 1,018.40
General Expenses
Legal and Accounting
Insurance
Insurance
150.90
19.38
Corporate Franchise Taxes
10.00
10.00
Water Taxes
24.95
Mortgage Refinancing
Salary, E. M. P.
Depreciation
410.00
Total Expenses
$2,259.70
$2,716.68
Less: Income from Bonds
Net Expenses
$2,259.70
$2,716.68
Net Income Reported on Returns
($1,059.70)
$ 583.32
The parties have agreed that the above is a correct statement of the net incomes of the corporations if they are separately liable to income tax, with the exception noted below. We approve the determination of the respondent that the corporations are liable to income tax. During 1938 or prior thereto the partnership, Paymer Bros., purchased $5,000 of certificates of indebtedness of Raymep, paying therefor $4,500. During 1938 it sold these certificates of indebtedness for $5,000 cash, realizing a profit of $500. During the period of holding Paymer Bros. received interest of $87.50 upon such certificates of indebtedness. *546 The question presented is whether Raymep is liable to income tax upon the $87.50 interest received by Paymer Bros. and likewise upon the $500 profit made by Paymer Bros. upon the sale of those certificates. The respondent has so determined. We think, however, that the interest of $87.50 and the profit of $500 are taxable to Paymer Bros. and not to Raymep. Proper adjustment will be made in the computation under Rule 50. The third question for consideration is whether Raymep and Westrich Realty Corp. are liable to a 25 percent addition to tax by reason of failure to file personal holding company tax returns for 1938. The question is whether they had a reasonable cause for failure to file those returns. We think that they did not. The action of the respondent in making the addition to the tax is sustained upon the authority of ; ; ; . The final question is whether the individual petitioners are liable *547 to income tax upon the net income of the two corporate petitioners. The evidence conclusively shows that the partnership, Paymer Bros., always used the income of the corporate petitioners as their own. This was the equivalent of a distribution by the corporation of the income to them. The respondent did not err in holding the individual petitioners liable to income tax upon the net income of the corporations received and used by them. In the petitions of Westrich Realty Corp., Docket No. 108471, and Raymep Realty Corp., Inc., Docket No. 108472, is an allegation of error as follows: The Commissioner of Internal Revenue has erred in computing the amount of the income tax. This is explained as follows in paragraph 5 of each petition: In computing the income tax to be assessed against * * * [petitioner] the Commissioner has not credited the amount of excess profits tax, first computed on the same income, against the computation of income tax liability. Reference to copies of the deficiency notices attached to the petitions shows that the respondent has computed the deficiencies in income tax upon the same net income as the excess profits tax is computed; in other words, both bite *548 at the same point. The petitioners contend that it was the intention of Congress, and also of the respondent by his regulations promulgated in pursuance of the revenue acts, that the income tax should be computed upon the net income after the deduction therefrom of the excess profits tax imposed for the same year. The excess profits tax for 1938 is imposed under section 602 of the Revenue Act for that year. Section 23 (c) of the same Act provides for the deduction of such taxes "paid or accrued within the taxable year." In the instant proceedings the corporations made no election as to whether their returns should be upon a cash basis or upon an accrual basis. The corporations kept no books of account. They filed no income tax returns. The respondent has simply computed the amount of the corporations' income and excess profits tax liabilities for 1937. In the circumstances of the case we are of the opinion that the corporations should be given the benefit of an accrual basis and that the corporation income taxes should be computed upon the agreed net incomes of the corporations reduced by the excess profits tax liability for 1938. Decisions will be entered under Rule 50. *549